# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MARILYNN LEOLA MARSHALL,

        Plaintiff,

vs.

Case No. 3:17-cv-1418-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Marilynn Leola Marshall ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability income benefits ("DIB"). Plaintiff's alleged inability to work is the result of kidney issues, lupus, leukocytosis, anemia, and diabetes. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed March 9, 2018, at 67, 79, 199. Plaintiff filed an application for DIB on October 16, 2013,[2] alleging an onset disability date of August 23, 2013. Tr. at 159. The application was denied initially, Tr. at 67-77, 78, 92-94, 113, and upon reconsideration, Tr. at 79-90, 91, 95, 96-100.

---

    [1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed March 9, 2018; Reference Order (Doc. No. 13), entered March 12, 2018.

    [2]    Although actually completed on October 16, 2013, see Tr. at 159, the protective filing date of the application is listed elsewhere in the administrative transcript as October 2, 2013, see, e.g., Tr. at 67, 79.

On April 11, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 48-66. Plaintiff was fifty-three years old at the time of the hearing. See Tr. at 52 (indicating date of birth). The ALJ issued a Decision on June 22, 2016, finding Plaintiff not disabled through the date of the Decision. Tr. at 20-32.

The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 9, 10; see Tr. at 279-82 (brief). On June 1, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 6-8, thereby making the ALJ's Decision the final decision of the Commissioner. On December 21, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises five issues:

[1] Whether substantial evidence supports the ALJ's [D]ecision considering the ALJ gave significant weight to non-examining reviewing physician, Howard Shapiro, M.D., but failed to provide an explanation of why she was not including the manipulative limitations to which Dr. Shapiro had opined[.]

[2] Whether the ALJ erred in her failure to credit the opinions of . . . Plaintiff's treating physicians, Alex Gonzalez, M.D.[ ]and Paul Alfino, M.D., which were consistent with and supported by the medical records with regard to the number of absences and time off task . . . Plaintiff would medically require because the evidence of record established that . . . Plaintiff had a combined total of at least 60 doctors' appointments and days spent in the hospital (including 17 days of inpatient hospital stays) during the relevant 33 month time period.

[3] Whether the ALJ erred in failing to credit the opinion of Plaintiff's treating physician, [Dr.] Gonzalez, for the stated reason that Dr. Gonzalez failed to opine to any functional limitations. Dr. Gonzalez did opine to specific functional limitations . . . .

[4] Whether[ ] remand is necessary because if the 54[-]year[-]old Plaintiff could not do the full range of sedentary work she must be found disabled and by failing to properly to consider the opinion of . . . Plaintiff's treating physician Dr. Gonzalez, the ALJ circumvented the Medical Vocational Guidelines

> [5] Whether the ALJ erred in her failure to evaluate whether . . . Plaintiff's medically diagnosed impairment fibromyalgia (which the ALJ found to be a severe impairment and which the record reflects signs and symptoms of fatigue, dizzy spells, bilateral shoulder pain, total body aches, and headaches) medically equaled Listing 14.07C and failed to document the criteria contained within [Social Security Ruling ("SRR")] 12-2p § II.B.

Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 21; "Pl.'s Mem."), filed June 26, 2018, at 1-2. On August 23, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") addressing Plaintiff's issues. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings because the ALJ erred in considering Dr. Gonzalez's opinions on Plaintiff's functional limitations.

On remand, a proper evaluation of Dr. Gonzalez's opinions on Plaintiff's functional limitations (third issue) may impact the ALJ's evaluation of Dr. Gonzalez's other opinions, Dr. Shapiro's opinions, and Dr. Alfino's opinions (first and second issues), as well as the ALJ's disability determination (fourth issue) and the ALJ's consideration of Plaintiff's fibromyalgia at step three (fifth issue). For this reason, the Court need not address Plaintiff's first, second, fourth, and fifth issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry through step four, where the inquiry ended based on the ALJ's finding at that step. See Tr. at 22-32. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 23, 2013, the alleged onset date." Tr. at 22 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: polycystic kidney disease, G6PD deficiency, polymyalgia rheumatica, diabetes mellitus type II, hypertension, anemia secondary to renal disease, stage three renal disease, fibromyalgia, [and] osteoarthritis." Tr. at 22 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except: no more than frequent climbing ramps and stairs, stooping, kneeling, crouching, or crawling: no balancing or climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme heat, extreme cold, wetness, vibration, or hazards (i.e. machinery, heights. etc.).

Tr. at 23 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work as an Accounting Clerk." Tr. at 31 (emphasis omitted). The ALJ did not make an alternative finding regarding the fifth step. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 23, 2013, through the date of th[e D]ecision." Tr. at 32 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by

substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned addresses the issue regarding the ALJ's evaluation of Dr. Gonzalez's opinions on Plaintiff's functional limitations. As noted above, the remaining issues raised by Plaintiff are not addressed.

### A. Parties' Arguments

Plaintiff contends the ALJ was "simply incorrect" in stating that "Dr. Gonzalez did not opine to any actual functional limitations." Pl.'s Mem. at 16-17. According to Plaintiff, "Dr. Gonzalez provided a detailed opinion on such specific[-]work related activities as standing, walking, sitting, lifting, carrying, and postural activities." Id. at 17 (citation omitted). Plaintiff argues that "[t]he ALJ completely ignored Dr. Gonzalez's opined . . . functional limitations." Id. Plaintiff asserts that "[t]his is particularly troubling because Dr. Gonzalez was . . . Plaintiff's longtime treating physician." Id.

Responding, Defendant contends that "the ALJ specifically cited Dr. Gonzalez's Disability Impairment Questionnaire, which suggests her statement was a drafting error." Def.'s Mem. at 12-13 (citation omitted). According to Defendant, "any error is harmless because the ALJ's [D]ecision clearly demonstrates that she found the medical evidence did not support Drs. Gonzalez['s] and Alfino's opinions that Plaintiff had disabling limitations." Id. at 13 (citation omitted). Defendant argues that "[t]he ALJ's reasoning that unremarkable medical findings did not support Dr. Gonzalez's opinion that Plaintiff had disabling limitations applies with equal force to the specific disabling limitations he identified." Id.

**B. Applicable Law**

The Regulations[4] establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians

---

[4] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claim, unless otherwise noted.

[5] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[6] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

"are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation

omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

**C. Dr. Gonzalez's Opinions/ALJ's Decision/Analysis**

Dr. Gonzalez began treating Plaintiff on May 27, 2009. See Tr. at 370. In June 2015, Dr. Gonzalez completed a Disability Impairment Questionnaire containing opinions regarding the effects of Plaintiff's impairments on Plaintiff's ability to perform work-related functions. See Tr. at 506-10. Dr. Gonzalez indicated that he saw Plaintiff every two months and that the date of her most recent treatment was June 2, 2015. Tr. at 506. He opined the following. Plaintiff can perform a job in a seated position for no more than one hour and can perform a job standing and/or walking for less than one hour. Tr. at 508. Plaintiff has to get up from

a seated position every thirty minutes and has to wait thirty minutes to return to the seated position. Tr. at 508. Plaintiff needs to elevate her legs to waist level six times per day while sitting. Tr. at 508. Plaintiff can only occasionally lift and carry between zero to five pounds. Tr. at 508. Plaintiff can "[n]ever/[r]arely" grasp, turn, and twist objects; use her hands/fingers for fine manipulations; or use her arms for reaching (including overhead). Tr. at 509. Plaintiff's symptoms would likely increase if she were placed in a competitive work environment because she is unable to sit, stand, or use any office equipment consistently. Tr. at 509. Plaintiff frequently (1/3 to 2/3 of an eight-hour workday) experiences pain, fatigue, or other symptoms severe enough to interfere with attention and concentration. Tr. at 509. Plaintiff would need to take unscheduled breaks every hour for thirty to sixty minutes. Tr. at 509. She would be absent from work more than three times per month. Tr. at 510.

Additionally, Dr. Gonzalez stated that Plaintiff experiences easy fatigue and weakness due to chronic kidney disease and anemia, that she needed multiple blood transfusions and hospitalization for her condition, and that she has increased shortness of breath and dyspnea on exertion due to her chronic condition. Tr. at 510. He concluded Plaintiff is "unable to sustain a regular or part time work schedule." Tr. at 510.

Dr. Gonzalez also authored a Narrative Report dated July 14, 2015, in which he opined that Plaintiff "has poor prognosis due to progression of her chronic kidney disease and chronic anemia and polycystic kidney disease" and that Plaintiff is "100% disabled and incapable of full time or part time employment." Tr. at 512 (capitalization omitted); see Tr. at 511-12.

The ALJ stated as follows with respect to Dr. Gonzalez's opinions:

In June 2015, Dr. Gonzale[z] completed additional medical source statements. It was noted that [Plaintiff's] symptoms had been diagnosed as kidney disease,

> diabetes mellitus, hypertension, polymyalgia rheumatica, anemia, muscle pain, and GERD. Further, Dr. Gonzale[z] stated that [Plaintiff] had a poor prognosis due to progression of her kidney disease and anemia, as well as he believed that she was 100% disabled and incapable of full time or part time employment.

Tr. at 29 (citation omitted).

The ALJ ultimately found that "the record as a whole does not substantiate the restrictive assessment by [Plaintiff's] treating internist, Dr. Gonzale[z], and [Dr. Alfino[7]], both finding that [Plaintiff] was disabled and unable to work, although neither opined any actual functional limitations." Tr. at 29. She then cited SSR 96-5p for the proposition that opinions about whether a claimant is disabled or unable to work are opinions on issues reserved for the Commissioner and are not entitled to controlling weight. Tr. at 29. The ALJ concluded the following:

> [Dr. Gonzalez's] assessment of disability and [Plaintiff's] inability to work are unsupported and involve an issue reserved for the Commissioner. Thus, no significant weight is accorded to the opinions that [Plaintiff] was disabled.

Tr. at 29.

The ALJ erred in her evaluation of Dr. Gonzalez's opinions in the Disability Impairment Questionnaire. As Plaintiff argues, the ALJ was incorrect in stating that Dr. Gonzalez did not "opine[ ] any actual functional limitations." Tr. at 29. Defendant contends any error in this regard is harmless. The undersigned disagrees.

Although the ALJ observed that in June 2015, Dr. Gonzalez completed "medical source statements," and she cited the exhibits containing the Disability Impairment Questionnaire and the Narrative Report, see Tr. at 29, she made no mention of the opined

---

[7] On October 2, 2013, Dr. Alfino opined that Plaintiff suffers from "[s]evere limitation of functional capacity; [is] permanently incapable of any kind of work; [and is] totally and permanently disabled from gainful employment." Tr. at 355.

limitations in that questionnaire. The ALJ listed Dr. Gonzalez's diagnoses of Plaintiff that are on the first page of the questionnaire, but she evidently did not consider the next five pages that are replete with functional limitations. This is evident both because the ALJ did not refer to them and because later in the Decision she stated that Dr. Gonzalez did not "opine[ ] any actual functional limitations." Tr. at 29. When weighing Dr. Gonzalez's opinions, the ALJ focused on the opinions at the end of the Narrative Report that Plaintiff is disabled and is unable to work. See Tr. at 511-12 (Narrative Report). Indeed, it appears the ALJ weighed only the opinions in the Narrative Report as these are the only opinions she referred to when she stated that she gave them "no significant weight." Tr. at 29.

The ALJ's failure to acknowledge Dr. Gonzalez's opined limitations anywhere in the Decision, together with her statement that Dr. Gonzalez did not provide any opinions about Plaintiff's functional limitations, frustrates judicial review because the Court is unable to determine whether the ALJ considered Plaintiff's medical condition as a whole. See Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole") (citing Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)). Notably, the ALJ discounted Dr. Gonzalez's opinions mainly on the ground that they were not supported by "the record as a whole." Tr. at 29. The Court is unable to determine whether this reason is supported by substantial evidence when it does not appear that the ALJ considered important medical opinions of record.

To the extent Defendant argues the ALJ's inaccurate statement was merely a "drafting error," Def.'s Mem. at 12-13, the undersigned disagrees for the reasons set out above.

Further, given the structure of the sentence ("although neither opined any actual functional limitations . . . ," Tr. at 29), it is highly unlikely the statement was a result of a typographical error.

Defendant's assertion that "[t]he ALJ's reasoning that unremarkable medical findings did not support Dr. Gonzalez's opinion that Plaintiff had disabling limitations applies with equal force to the specific disabling limitations he identified," Def.'s Mem. at 13, is unavailing. Defendant's arguments cannot serve as "post hoc rationalizations for agency actions." Baker v. Comm'r of Soc. Sec., 384 F. App'x. 893, 896 (11th Cir. 2010) (citing FPC v. Texaco Inc., 417 U.S. 380, 397 (1974)); see Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984). It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. See Austin v. Astrue, No. 5:07-cv-52-MCR-EMT, 2008 WL 2385520, at *8 n.7 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings"); see also Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991). Although the ALJ was entitled to weigh the evidence, it does not appear that she even considered Dr. Gonzalez's opined limitations contained in the Disability Impairment Questionnaire. The Court cannot review an assessment of evidence that was never done by the ALJ.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Reconsider the opinions of treating physician Alex Gonzalez, M.D. in the Disability Impairment Questionnaire (including the opined functional limitations), assign the appropriate weight to such opinions, and explain the reasoning behind the weight assigned;

    (B) If appropriate, reconsider the remaining opinions of Dr. Gonzalez;

    (C) If appropriate, reconsider the opinions of Howard Shapiro, M.D. and Paul Alfino, M.D.;

    (D) If appropriate, reconsider Plaintiff's fibromyalgia at step three of the sequential inquiry; and

    (E) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 18, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record